against the Citizenship and Immigration Services. Ms. O'Toole, Ms. O'Toole, you're muted. Good morning, Your Honors. Apologies. Thank you. May I proceed? Please. Your case has been called. Please proceed. Ms. O'Toole, it sounds like you're arguing from the bottom of a deep well. Do you have a microphone close to you? I do. If I speak louder, are you able to hear me? Maybe that will help. Okay, I'll give that a try. My name is Emily O'Toole, appearing on behalf of plaintiff appellant Jennifer Arguijo. Ms. Arguijo, a Honduran citizen, was abused for years at the hands of her U.S. citizen stepfather. Yet Ms. Arguijo's self-petition for immediate relative status, pursuant to the Violence Against Women Act provision of the Immigration and Nationality Act, was denied by USCIS because Ms. Arguijo did not continue a relationship with her abusive stepfather after her mother divorced him. The VAWA provisions of the INA provide that a victim of abuse who is a stepchild of a U.S. citizen may self-petition for a change in her immigration status without relying on her abuser. Pursuant to the plain language of the INA, a step-parent-child relationship is assessed based on whether the marriage forming the step-relationship occurred prior to the child turning 18. Nowhere in the statute do the words continuing relationship appear. USCIS, however, denied Ms. Arguijo's self-petition after finding she no longer qualified as a child because she did not maintain a continuing relationship with her abusive stepfather after the divorce. This interpretation of the VAWA provision is in conflict with the plain meaning of the statute and is due no deference. And even if the court finds some lack of clarity in the statute, USCIS's interpretation is unreasonable in the VAWA context and is still not entitled to any deference. Unreasonable in what context? In the Violence Against Women Act. You can refer to the Act or some other thing, but made-up initialisms don't help us generalists. Understood, Your Honor. The Violence Against Women Act provisions of the Immigration and Nationality Act. Likewise, this interpretation is in violation of equal protection as USCIS cannot provide... Ms. O'Toole, can I just ask you? I find it very difficult to imagine a situation in which we would find an equal protection violation on constitutional grounds without first having reached and therefore rendered the constitutional question unnecessary by deciding on statutory grounds. This is arbitrary and capricious. Your Honor, we agree with that assertion. We believe that this case can be decided on statutory grounds. Specifically, under the plain language of the INA... I'm not so sure about how plain the language is here, since as near as I can tell, it's utterly silent in both directions on the termination of the relationship. Can I ask you how the law more generally treats stepchildren after a divorce? For example, with respect to support obligations, inheritance rights, social security benefits, and the like? Yes, Your Honor. There are a number of other contexts in which the law has treated the step-parent-child relationship as continuing past a divorce. For example, in Petition of U.S., there was a claim brought under Death of the High Seas Act made by the stepson of an injured sailor who was related to a step-parent by his biological mother. But there, the court recognized that the statute contemplated that the stepchild would qualify as a child even after the death there. And that's an example of one context, but... Counsel, I take it... I think that's one of your examples from your brief. Is that understood universally, or are there circumstances where the stepchild relation is understood as ending on divorce or death? Your Honor, I believe there are circumstances where stepchild may be interpreted in that way, but the term stepchild as applied in the context before us here, namely in the context of domestic abuse, as envisioned under the immigration... ...is about how the word stepchild is generally understood in the law. Your brief cites a few circumstances where it's understood as continuing after divorce or death. I'm asking whether there are circumstances where it does not. Mr. Halaska's argument boils down to, well, it's all just a matter of common linguistic usage. I wonder if it is a matter of common linguistic usage. That's why I'm trying to figure out more generally how the law understands it. Have you done a full survey? Your Honor, we have done a survey. I can't necessarily say it is a complete, full survey, but we've pointed to the examples in our brief... I understand that, but that's why I was asking whether there were contrary examples. I don't think I'll be revealing any secrets to tell you. I asked my law clerks to do a comprehensive survey. They found some examples where courts held that the relation continued after divorce or death. They found some examples, maybe more, where a court held that it didn't continue after death. And, of course, if that's what the legal landscape looks like, the next question would be, doesn't the agency get to choose? At least if it decides to invoke Chevron. Yes, but, Your Honor, if the agency is making an interpretation and making that choice, as you mentioned, the agency's interpretation has to be reasonable in the context in which it is applying that definition. And in the context of domestic abuse, as envisioned by the Violence Against Women Act provision, the Immigration and Nationality Act, to... I was asking a question about deference to agency interpretations. Let me tell you, I did not see a citation to Chevron in the agency's brief. Do you understand them to be relying on Chevron? Your Honor, we do, because this involves a review of an agency's authoritative interpretation of a statute here. But the agency did not do any deference here under Chevron. Even looking to the agency's interpretation, it's unreasonable to require a continuing relationship in the context of domestic abuse pursuant to the Violence Against Women Act provision. The agency relies on a BIA decision in matter of Mauer, which states that a continuing relationship between the step-parent and step-child must exist in order to qualify as a child. But Mauer did not involve domestic abuse here, and it was decided more than a decade before the passage of VAWA. None of the BIA case law cited here was decided after the passage of VAWA, indicating the Violence Against Women Act. It's really hard, isn't it? It is. It's a mouthful. Once you start going down the road of replacing English words with weird initialisms, it seems really hard to stop. But it does help us generalists for you to stop. Absolutely, Your Honor. The Violence Against Women Act provisions were not in existence when matter of Mauer was decided. Those decisions couldn't have possibly contemplated the implication of requiring a child victim of abuse to continue to maintain any sort of relationship with her abuser in order to receive relief that was intended for her. It puts the child in the untenable position of needing to make a decision as to whether they stay in the home of an abuser and ensure that they will maintain access to this relief or remove themselves from that situation and risk not having access to this relief. But it's important here to consider that intent of Congress in passing these provisions. Congress did not intend for the Violence Against Women Act provision to lock immigrant women and children in these types of abusive relationships and to require a continuing relationship does that here. Going back to matter of Mauer and the other BIA cases for Board of Immigration Appeals cases in this context, they consider what the intent of Congress was in applying the petitioning process that issue in each of the cases. And in those cases, the intent of those petitioning processes was to reunite families. But that is clearly not the intent of the Violence Against Women Act. I must say, Counsel, all this talk about intent leaves me cold. Do you actually claim the ability to look inside the heads of 535 members of Congress and see what's there? They enacted their language. They didn't enact the contents of their heads. Why don't we just stick to interpreting the language? Sure, Your Honor. And under the plain language of the statute, the Violence Against Women Act provision at issue here, 8 U.S.C. section 1154A1A4, does allow immediate relatives, including stepchildren, who are abused by a U.S. citizen relative to self-petition for legal immigration status. The provision says, requires only that the petitioner be a child under the INA definition, have been subject to abuse by her relative, and resides or has resided in the past with the abusive stepfather to qualify. And looking to the definition of stepchild in section 8 U.S.C. 1101B1B, the provision says nothing when defining stepchild about the termination of the relationship at divorce. So, per the plain language of the statute, Ms. Arguejo qualifies here as a stepchild and qualified at the time she filed her petition. She was 11 when she filed her petition. Her parents, her mother divorced her stepfather when she was 16, and she filed her petition thereafter. Your Honors, I wish to reserve three minutes for rebuttal, and I see my time is up. Thank you so much for your time here today. Certainly, Counsel. Mr. Velasca. Good morning, Your Honors. May it please the courts. Alexander Velasca for the government. This court should affirm the District Court's decision for two simple reasons. First, the Immigration and Nationality Act permits someone who is a child, not someone who was a child, to self-petition for immediate relative status. Individuals like the plaintiff here, who were formerly subject to a U.S. citizen family member's abuse, are eligible to have their removals canceled and to be adjusted. Mr. Velasca, let me tell you what worries me. This whole business about relying on the word is begs the question whether one can be a stepchild after the stepparents' divorce or death. Your adversary has cited, page 19 of the opening brief, and then again in the reply brief, a bunch of legal doctrines that say or assume that the stepchild relation continues. Are there contrary cases? There are other contrary cases in different bodies of law, Your Honor. This is the Rosello case. The Supreme Court says that interpretations or language in other statutes often does not shed light on language in an entirely separate statute. The Immigration and Nationality Act says, is a stepchild, and a stepchild is a... I asked about other bodies of law, and you come right back to the Immigration and Nationality Act. It would have helped me considerably had your brief addressed other bodies of law rather than the present tense verb is, which doesn't at all help figure out the meaning of the word stepchild. I'm asking you now on your feet. I'm giving you the opportunity to address other bodies of law. You can take it or not. I will take the opportunity, Your Honor. Thank you. I think if we look at the IRS, the Treasury cases that the appellant cites in the opening brief, you can see that the Treasury Department itself felt it necessary to enact a regulation saying that a stepparent-stepchild relationship will continue after the death or divorce of a natural parent. I think that raises the inference that it would naturally terminate as a matter of law. The regulation in the Treasury Department context, in the tax context, is what gives it that continuing effect that allows the relationship to continue. I think that shows that without some kind of affirmative statement, then you are left with the presumption that the relationship is terminated as a matter of law upon the death or divorce. Are there regulations and statutes in other contexts that provide expressly that it does terminate? Not that I'm aware of, Your Honor, one way or another. I would have thought the inference, or at least a reasonable inference that might be drawn from that Treasury regulation, for example, would be, oh, we could face this kind of problem. We ought to try to give a clear answer to it. We obviously don't have that in the Immigration and Nationality Act provisions of the Violence Against Women Act. But I don't want to distract you from other bodies of law you may want to address with Judge Easterbrook. So I would want to make clear at the start that the definition of child, stepchild, those are not themselves confined to the Violence Against Women Act aspects of the Immigration and Nationality Act. Those appear in Section 1101 of the Immigration and Nationality Act, and they apply generally to all terms in the Act itself. So that's right there. BIA case law, excuse me, Board of Immigration Appeals case law, going back to at least, I believe, the 60s or the 70s, has interpreted that term stepchild as requiring a continuing relationship. It appears before the matter of malware decision. Every time it has done that, it has been, as counsel for plaintiff has suggested, in essence, to extend benefits and reunite families. Let me, could I ask you, Mr. Hlaska, suppose FM had murdered the plaintiff's mother, ending the marriage in her death. Would that murder bar the plaintiff from relief under the Violence Against Women Act? Your Honor, that's a difficult situation. Your position would say, yes, it does bar her petition, correct? Not necessarily, Your Honor, and that's where the matter of malware application comes into play here, and then the BIA case law issue. But she should be in a relationship with her mother's murderer? No, Your Honor. What I mean to convey is that what constitutes a continuing relationship is very fact specific. The USCIS regulations say that the government will consider any evidence of it. Where does this continuing relationship business find its footing in the statute? Thank you, Your Honor. If we are, as you suggest, just supposed to look at the common understanding of stepchild and believe that, per the common understanding, that ends on divorce, how does any continuing relationship get into it? The BIA has interpreted the step relationship, the relationship of affinity as terminating. Counsel, I wish you'd listen to my question. How is that part of the statute? It is not a plausible interpretation of any language in the statute. It must come from someplace else. Is it an understanding based on normal, non-statutory linguistic understanding of the word stepchild? Or is it completely made up? The Board of Immigration Appeals decision in interpreting the term stepchild matter of Simichevich in 1963 actually relies on a federal case law. The decision, the Brotherhood of Firemen and Enginemen decision out of the District of Minnesota that discusses how step relationships are relationships of affinity. So the BIA decision is, in the BIA line of case law, is in some respects rooted in an interpretation in federal law, which is itself harkening back to the common law. In other words, it's not even remotely based on the language of the statute. I do believe it is, Your Honor. I recognize that the court may disagree with that. And so I think that it may be helpful for me to turn to the second prong of the Chevron analysis. And I apologize. We do cite that the Chevron decision on page 35 of our brief. Assuming that the term stepchild is an ambiguous term, then Chevron's counsel has has the Citizenship and Immigration Services ever interpreted this word or the phrase on its own? Or has it relied entirely on Maurer? The USCIS is bound under USC 1103. I wish you would have listened to my conversation with Ms. O'Toole. Don't use weird initialisms. It suffices to use real words. Now, my question. Has the agency ever interpreted this language on its own or is it relying entirely on Maurer? I believe it is relying entirely on Maurer and that's pursuant to statute. Decisions of the Attorney General are binding by statute on employees of the Department of Homeland Security, of which Citizenship and Immigration Services is a part. Do the definitions, legal definitions, make any difference to your argument? I'm sorry, Your Honor. Can you clarify the question? I saw a dictionary and other dictionaries in defining stepchild. Does that help you or hurt you? I think they help us, Your Honor. All of those definitions contemplate a spouse. They refer to a spouse, a husband or a wife, not an ex-spouse, an ex-husband or an ex-wife, which shows that, presumptively, you can say that a stepchild is someone whose natural parent is married to a non-biological parent. And so that person is the individual's stepchild, excuse me, stepmother or stepfather. And I think that's in both legal dictionaries, as the District Court recognized, in legal dictionaries, in plain language dictionaries, in federal case law and in the Board of Immigration Appeals case law. I think it's important. Yes, Your Honor. If the plaintiff here had gone to the trouble of getting a no-contact order from a state court, would that suffice as a continuing relationship? I'm not sure whether it would suffice or not, Your Honor. It's certainly something that USCIS would, excuse me, Citizenship and Immigration Services would consider when adjudicating the petition, if it were submitted along with the application. And that just goes to emphasize the... Wouldn't that be a kind of, if that would be sufficient, and you're saying that maybe it would be, if that would be sufficient, isn't that kind of a perverse sort of relationship to use to justify granting relief in such a case but denying it in this one? I think it would be if that were the actual framing of the statute. I want to emphasize here that there is another avenue for relief for individuals exactly in the plaintiff's position here in removal proceedings. An individual who was subject formerly to abuse by a U.S. citizen family member is eligible to have their removal canceled and to be adjusted to lawful permanent resident status. Only an immigration judge can grant that relief, and it can only occur in removal proceedings. It just simply is not the type of relief that's available through a self-petition for immediate relative status. Why does that distinction make any sense if the statutory language is flexible enough to allow the relief granted in Maurer and Murion and the other cases, but not here? It goes to the different, well, first of all, I'd say that the language is different. In 1154A1A4, it says a person who is a child and who is eligible for immediate relative status. In Section 8 U.S.C. 11, excuse me, 1229B, it says an individual who has been battered or subject to extreme abuse by a U.S. citizen family member. So the difference in language is the first argument that we would. I understand the point, but if that relief is available in removal proceedings, what's the point of subjecting Ms. Arguello to removal proceedings if she qualifies as someone who has been battered and the statutory language about who is or was a stepchild is ambiguous? I think more than what the two statutes go to show, Your Honor, is that Congress didn't leave individuals in Ms. Arguello's position with no relief whatsoever. She lives in the shadows, in essence, because she doesn't have a continuing relationship with her abuser. But if she's picked up by government agents, then she can use this as a defense to avoid removal. I think in this, it is a form of relief available in removal proceedings. Thank you, Your Honor. It's helpful to know. Mr. Holaska, if we were to agree, well, let me ask you one more. A plaintiff asked it as a rhetorical question in her reply brief, and I guess I'd like to get your response. Why does it make sense to allow a battered spouse to self-petition after divorce, but not to allow her children to self-petition? So the individual in derivative, a battered spouse who filed a self-petition pursuant to the statute after divorce could allow her children to petition as derivatives if they qualified as the child. So Congress did permit those individuals to petition along with the spouse. But not if she has the bad judgment to die first. No, of course not, Your Honor. This is certainly a difficult case, and I don't want to – I certainly don't – I'm cognizant of the suggestion that – There's a way to make it easy. But if we were to disagree with your reading of the plain language of the statute and agree with Ms. Arguello's arguments, or at least some of them, what unwelcome consequences do you see for other cases under immigration law? Because Ms. Arguello petitioned her Sikh status under the general terms of the Immigration and Nationality Act, any decision in this context would necessarily touch on any other case that discusses what – or interprets what it means to be a child or a stepchild. So it's really – it's difficult to say exactly what this means. I'm asking for your parade of horribles. If our hearts are touched and our brains are persuaded that Ms. Arguello should be entitled to relief here, give me your parade of horribles. I think what it does is it melds together separate statutory requirements that Congress laid out. Congress made a very specific avenue for relief for individuals who seek to file a family-based immigration petition and allowed individuals who were subject to abuse – or, excuse me, are subject to abuse and are entitled to petition because of that abuse to file that self-petition on their own. Separately, it enacted a separate avenue for relief for people who are no longer in the imminent emergency situation of being subject to abuse, and that's a defense and removal proceedings. My time has expired, so if there are no more questions, I would thank the Court and urge the Court to affirm the decision below. Certainly, Mr. Hlaska. Ms. O'Toole, anything further? Your Honors, I have nothing further. Thank you so much for your time today. Case is taken under advisement.